JOHN A. STEWART et al., trustees, &c., complainants,

*v.*

FAIRCHILD-BALDWIN COMPANY et al., respondents.

[Submitted July 7th, 1919.   Decided ·November 17th, 1919.]

Where a mortgage does not expressly pledge the rents, issues and profits of the mortgaged premises as further security for the payment of the debt, the rents accrued prior to the appointment of a receiver in a foreclosure proceeding (appointed on the application of the second mortgagee) belong to the mortgagor or the owner of the fee, and such receiver will not be directed to collect and apply them in payment either of unpaid taxes or interest on the mortgages.

Appeal of American Real Estate Company.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, whose opinion is reported in *90 N. J. Eq. 139.*

*Mr. Samuel F. Leber,* for the American Real Estate Company, appellant.

*Messrs. Pitney, Hardin & Skinner,* for the Chester Realty Company, respondent.

*Messrs. McCarter & English,* for John A. Stewart et al., trustees, &c., respondents.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal from orders directing a receiver in a foreclosure proceeding to collect rents that had accrued prior to the time of his appointment. The facts are these: The American Real Estate Company is the owner of land, with an office building erected thereon and occupied by numerous tenants, in the city of Newark. John A. Stewart and others, trustees of the Liverpool & London & Globe Insurance Company, Ltd., hold a first mortgage on the property securing the principal sum of $350,000. The Chester Realty Company holds a second mortgage for $90,000. Hyman Rosensohn, trustee, holds a third mortgage for $15,000. There were unpaid taxes and assessments of about $36,000.

The bill of complaint was filed by the first mortgagee to foreclose their mortgage for default in the payment of interest, taxes and assessments, and the second and third mortgagees, as well as the tenants were brought into court. The bill was filed January 7th, 1919. On January 18th, 1919, on the application of the second mortgagee, the Chester Realty Company, a receiver was appointed and was ordered "to take charge of the mortgaged premises and manage the same, with power to sue for and collect the rents, issues and profits thereof," and it was further ordered "that the tenants in possession of the said premises be and they are hereby ordered and directed to pay the rents *now in arrears, if any,* and the rents due and to grow due, to the said receiver until the further order of the court." In that order the owner and tenants were directed to show cause

on January 28th, 1919, "why the appointment of said receiver should not be continued, and why the directions as to the disposal and application of the proceeds should not be confirmed and proper directions given as to their disposal." On the return day of the rule the appointment of the receiver was confirmed and continued, and the directions as to the disposal of the proceeds were confirmed and continued until the further order of the court. Later, on March 11th, 1919, the vice-chancellor ordered, among other things, "that the receiver herein proceed to collect the rents accrued and unpaid at the time of his appointment, that he keep the same in a separate fund and apply them to the payment of taxes and municipal liens which have accrued and remain unpaid, and second, to the payment of interest on the first mortgage, and that he hold the balance, if any remains after so doing, until the further order of the court."

On this appeal of the owner the only question raised is the legality of such parts of the orders as direct the receiver to collect rents that had accrued prior to his appointment.

We are of the opinion that the appeal is well taken.

It is important, in the first place, to clearly bear in mind the relationship between mortgagor and mortgagee, and the rights of a mortgagee in this state.

The common law rule, that a mortgage created an immediate estate in the mortgagee, and vested in him immediately, upon the execution and delivery of the mortgage, an actual estate with a right of immediate possession, subject only to be defeated by the payment of the mortgage money, has not been adopted by our courts. *Woodside* v. *Adams, 40 N. J. Law 417; Shields* v. *Lozear, 34 N. J. Law 496; Sanderson* v. *Price, 21 N. J. Law 637.*

However, upon breach of condition, the mortgagee's estate has all the incidents of a common law title, and he has the right to the possession of the mortgaged premises. *Woodside* v. *Adams, supra; Shields* v. *Lozear, supra.*

The mortgagee, after breach of condition, having a title in the mortgaged premises possessing all the incidents of a common law title, and only subject to be divested by the equitable proceeding to redeem, and having the right to possess the property,

has the right, from the date of taking such possession, to the profits arising from the estate. At common law, he could not be compelled to account to the mortgagor for the value of the profits taken by him. This was a hardship upon the mortgagor, and so a court of equity will compel the mortgagee to credit to the debt the profits received by him. This was done upon the theory, always obtaining in the court of chancery, that until the mortgagor has been foreclosed by decree of and from the right to redeem, the mortgage, even after default, was a security.

Since, after default the mortgagee can take possession or obtain possession by ejectment of the mortgaged premises, it follows, as a matter of course, that not until the mortgagee has obtained possession by either one of the above methods, can he take rents or profits arising from the lands. To hold otherwise would destroy the rights of the mortgagor up to the date of default and taking possession. It is only when the mortgagee acts upon default, and takes possession, that he puts to an end the rights of the mortgagor to the incidents that arise out of possession, subject, of course, to redemption by the mortgagor.

Now a receiver appointed by a court of equity in a foreclosure proceeding is a substitute for taking possession under the common law. It is a convenient substitute, because in cases where several mortgagees hold liens upon the premises in question, their rights in the rents and profits can better be adjudicated. But such a receiver has no more rights than the mortgagee himself would have, and since a mortgagee taking possession of mortgaged premises is not entitled to rents accrued before the date of taking possession, it follows that a receiver is not. The mortgagee is not entitled to any special favor. He is a secured creditor and has dealt with open eyes. He must look to the security. It follows, therefore, when, as here, a mortgage does not expressly pledge the rents, issues and profits of the mortgaged premises as further security for the payment of the debt, the rents accrued prior to the appointment of a receiver in a foreclosure proceeding (appointed on the application of the second mortgagee) belong to the mortgagor or the owner of the fee, and such receiver will not be directed to collect and apply

them in payment either of unpaid taxes or interest on the mortgage.

Such is the rule to be gathered from the cases. *Northrup* v. *Roe, 10 N. J. L. J. 334; Leeds* v. *Gifford, 41 N. J. Eq. 464; affirmed, 45 N. J. Eq. 245; Conover* v. *Grover, 31 N. J. Eq. 539.*

In the case of *Leeds* v. *Gifford, supra,* Vice-Chancellor Van Fleet says: "According to the rule now in force, a prior encumbrancer has an unquestionable right, as against the mortgagor and subsequent encumbrancers, in case his security is uncertain or precarious, to have the rents of the mortgaged premises, *accruing subsequent to the appointment of the receiver,* sequestered for his benefit."

It may be said that this statement was not necessary to the decision in the *Leeds Case,* but it is the opinion of an eminent equity judge, and this court affirmed that case on his opinion.

In the case of *Northrup* v. *Roe, supra,* the same vice-chancellor had before him the sharp and direct question for decision. This was a foreclosure case, and a motion was made for the appointment of a receiver. It appeared from the petition that the mortgaged premises had been conveyed to a grantee, who had died intestate leaving a widow and children; that the widow died and the children were in possession, and that the mortgaged premises, which consisted of a farm, were worked by a tenant for one-half of the crop. Petitioner proved insolvency of obligor and the inadequacy of the security. The vice-chancellor said: "The complainant is entitled to the aid of the court. The mortgaged premises are occupied by a tenant, who, in lieu of a money rent, delivers a share of the produce of the land. The application in this case was not made until nearly all the labor required to put the crops in, care for them and gather them had been expended. It is obvious, I think, that the mortgagee should not, under such circumstances, be allowed to take the whole of the mortgagor's share of the produce. He should not be permitted, in a case where he does not ask for the appointment of a receiver until all the labor necessary to make the crops has been done, to take all. The just rule, to be applied in such cases, as it seems to me, is this: To consider the value of the produce, which the mortgagor or landlord receives, as the fair

rental of the premises, for the year, and then give the mortgagee such part thereof as represents, on the basis above stated, the rental value of the premises from the time a receiver is appointed, that is to say, if six months of the year have expired when a receiver is appointed, only six months' rent shall be sequestered for the benefit of the mortgagee. * * * The rental of the mortgaged premises for the year ending April 1st, 1888, will be apportioned in the manner indicated above."

In the case of *Conover* v. *Grover, supra,* Chancellor Runyon said: "After the filing of the bill, application was made to the court for the appointment of a receiver of the rents, issues and profits of the mortgaged premises, which was granted. The assignment by Grover to Leggett of the lease, was made October 30th, 1877, six days after the bill was filed. *The mortgagees are entitled to the rents and profits which have accrued since the appointment of the receiver,* if necessary, for the satisfaction of their mortgages."

In the present case, the learned vice-chancellor thought that to permit the owner of the land to collect the rents that had accrued before the commencement of the foreclosure suit and which remained uncollected would work a fraud upon the mortgagee, in view of the fact that the owner had allowed taxes and interest to accrue. But, as we have pointed out, that view does not comport with the legal or equitable relationship of mortgagor and mortgagee.

The vice-chancellor looked upon the case at bar as an extraordinary one and as such not controlled by the ordinary rule which, of course, he clearly recognized. But we see nothing extraordinary about it except the fact that, by reason of the neglect of the owner to pay interest, taxes and assessments, the security had become "uncertain or precarious," which fact justified the appointment of a receiver of the rents, issues and profits thereafter accruing during the pendency of the foreclosure proceedings. *Leeds* v. *Gifford, supra.*

The orders appealed from will be reversed, with costs, and the record remitted to the court of chancery for modification of the orders in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.