The petition alleges that the mortgaged premises are a scant security for complainant's mortgage; that the mortgagor is insolvent, and asks the appointment of a receiver. The mortgage under foreclosure is in the sum of $2,000, and there is a prior mortgage of $6,000. Interest on the prior mortgage is in default, taxes are unpaid and the complainant's mortgage is due. There is a single affidavit as to value of the premises, submitted by complainant, and in this the value is fixed at $8,000. The premises consist of a building lot on which is erected a one-family house occupied by the defendants, husband and wife, as their home. The right of *Page 392 
the court to appoint a receiver under such circumstances is challenged on the ground that the privilege of occupancy of the mortgaged premises by the mortgagor until final decree and sale is inviolable. This raises a question upon which there has been no recent expression of opinion by this court and with reference to which there seems to be some contrariety of opinion among the members of the bar, and, possibly, among the judiciary as well. In view of the numerous foreclosure suits now pending in this court and the increasing frequency of applications of this kind some statement of the principles governing their disposition is deemed advisable.
It is, of course, common practice to appoint receivers in foreclosure suits where the mortgaged premises furnish an inadequate security and the mortgagor who has signed the bond is insolvent. Land Title and Trust Co. v. Kellogg, 73 N.J. Eq. 524; Stewart v. Fairchild-Baldwin Co., 91 N.J. Eq. 86. And, under appropriate provisions in the mortgages, frequently without reference to insolvency or inadequacy of security. ParamountBuilding and Loan Association v. Sacks, 107 N.J. Eq. 328. Even in the absence of such a provision in the mortgage, proof of insolvency has been held to be unnecessary if the security is uncertain and precarious. Broad and Market National Bank v.Larsen, 88 N.J. Eq. 245. But a more serious question arises where the mortgaged premises consist of a dwelling house occupied as a home by the mortgagor and there are no controlling provisions in the mortgage itself. In such a case the conscience of the chancellor is the only safe guide and there must be some special equity to warrant the court in dispossessing the mortgagor or compelling him to pay rent to a receiver pendentelite.
So far as I know there is no officially reported case in this state in which this has been done. Although in Warwick v.Hammell, 32 N.J. Eq. 427, where, after final decree, a third party procured a stay by attacking the title of the complainant to the mortgage, a receiver was appointed pending the controversy. The mortgaged premises consisted of a hotel occupied by the mortgagor and his family. But there *Page 393 
are a number of cases reported in the New Jersey Law Journal which show that the authority of the court to appoint a receiver and oblige the mortgagor to pay rent under some circumstances is not lacking, but that it is exercised infrequently and with great reluctance.
The earliest case that I have been able to find where this action has been taken is that of Miller v. Sauerbier, decided in 1876 and referred to in the editor's note to Minturn v.Harms (1879), 3 N.J.L.J. 22, but the opinion of the court is not reported.
In Babcock v. Smith, 2 N.J.L.J. 176 (decided May 5th, 1879), it appeared that the defendant's father with his family was in possession of one of the houses covered by the mortgage and that the defendant, who was a young unmarried man, claimed this house as his residence. The chancellor said:
"I have not yet gone so far as to turn the owner out of possession, and I do not think I will do so, unless under peculiar circumstances. The court is a court of conscience and will not act oppressively. It will not do so hard a thing as to turn an owner out of possession, unless he holds over against conscience or is acting unconscientiously. The court, however, will turn a tenant out of possession, although he is in possession by sufferance and without rent."
And an order was made for the appointment of a receiver with authority to put the father out of possession if he could not obtain a proper rent from him.
In Wood v. Eckert (1879), 3 N.J.L.J. 53, it was held that when a mortgagor in possession is insolvent and has allowed interest and taxes to accumulate for a number of years and has collected rents for several months without applying them to encumbrances and the property is inadequate security, the court will appoint a receiver although the mortgagor occupies the greater part of the property himself, and, if the mortgagor refuses to pay rent, the receiver will be authorized to take possession of the whole premises. In that case the chancellor said: *Page 394 
"It seems hard to put a receiver in possession, and to leave the mortgagor without a roof to cover his head, and ordinarily courts of equity hesitate to do so; but in this case the complainants also have their rights, and we must look likewise at their side of the question. Here is a mortgagor who is occupying the largest and most valuable part of the premises himself, and is carrying on business there, and has let the rest of the premises, and for several months or longer has collected the rents and is still collecting them and yet pays nothing on either his interest or taxes, allowing both to accumulate against the premises. This is neither just nor equitable, and cannot go on."
In Mutual Life Insurance Co. v. Norris, 3 N.J.L.J. 78
(decided December 31st, 1879), the complainant had obtained a final decree after five years' litigation. Interest was in arrears during all that time and taxes and assessments for a longer period were unpaid. The defendant was insolvent and the mortgaged premises were inadequate security. The premises were occupied by the defendant as his residence. Vice-Chancellor Van Fleet appointed a receiver and ordered "that the said John Norris should forthwith enter into a contract with said receiver to pay him in advance such rent as may be named by the receiver as a reasonable rent and pay the same, and that in default thereof said Norris should deliver up possession of said premises within ten days from the service upon him of notice so to do and a copy of this order."
In White v. Cramer (1880), 3 N.J.L.J. 302, one of the defendants who held a second mortgage applied for a receiver. It appeared that the security was inadequate; the mortgagor insolvent; prior encumbrances had been allowed to accumulate; the mortgagor was in possession, and was allowing the mortgaged premises to run down and go to waste. Hedge rows had been allowed to grow up and large trees had been cut down. Although notice of the application had been given to the mortgagor and the hearing upon the order to show cause adjourned for two weeks to give him an *Page 395 
opportunity to answer, yet no defense was made. The chancellor said that although a mortgagor is rarely put out of possession, yet under these circumstances a receiver will be appointed and the mortgagor will be required either to pay rent or to surrender possession of the property. He referred to the case ofCortleyeu v. Hathaway, 11 N.J. Eq. 39, as the leading authority in regard to the appointment of receivers.
In Williams, Receiver, v. Dube, 4 N.J.L.J. 24 (decided December 27th, 1880), it appeared that the mortgage was for only $700, and that on the premises was a small two-story frame building which could not bring much rent. Vice-Chancellor Van Fleet said that he would be unwilling to put the defendants out of doors in winter if the amount of rent which could be collected would be so small that the expenses of the proceedings would consume a large portion of it. It appeared, however, that the lower story only was occupied by the defendants and that they rented the upper story, and so a receiver was appointed to collect the rents of the upper story only.
In Baldwin v. Flagg (1881), 4 N.J.L.J. 181, the same vice-chancellor said:
"The court has been very reluctant to appoint receivers in cases in which the mortgagor himself was occupying the premises. The court is unwilling to put a man out of his own house, and to use the appointment of a receiver for the same purpose as a writ of assistance; but there are undoubtedly cases in which the court will appoint a receiver even when the owner is occupying the property. Where the situation of the property is such that the owner is occupying it at the expense of the mortgagee, the court may appoint a receiver and require the owner either to pay rent or to go out."
In the editor's note to Minturn v. Harms, supra, it is said "that in certain cases where the owner is occupying his home, especially if it be a farm, and to put him out of possession may be to leave him without a roof to cover his head, the court exbenevolentia may refuse to appoint a receiver;" and *Page 396 
in the note to Baldwin v. Flagg, supra, after reviewing the cases, the editor said:
"These cases are most of them only decisions at chambers, not appearing in the New Jersey Equity Reports, and they are only a few of the many cases that have been decided at chambers, and are not reported at all, but they show how the old rule has been modified and applied, and what the practice now [1886] is on this subject. The established practice seems to be that when the mortgagor or owner of the equity is himself occupying the premises the old rule is pretty strictly enforced, and there must be inadequacy of property and insolvency of the bondsmen, and an element of bad faith shown in the waste of the property or allowing prior encumbrances to accumulate to a serious degree; but if the mortgagor is collecting rents any accumulation of prior encumbrances will justify the appointment of a receiver, if the security is inadequate, and especially if the bondsman is insolvent."
The old rule referred to by the editor is, of course, that laid down in Cortleyeu v. Hathaway, supra. That decision shows that the courts of this state were not then in agreement with the New York rule referred to in the opinion. The rule in New York to-day is indicated by the following cases: Public Bank of NewYork v. London, 159 App. Div. 484; Curren v. Gillam,176 N.Y. Supp. 573; 106 N.Y. Mis. 652, and Broadview Traders, Inc., v.Ramdee Realty Corp., 226 N.Y. Supp. 649. In Curren v. Gill,supra, the court said:
"The right of a receiver to compel the mortgagor either to pay a reasonable sum for use and occupation, or surrender possession during the pendency of the foreclosure action, does not arise from any inherent power that attends in the order of appointment. He cannot deal with his charge as he sees fit, or arbitrarily compel the owner of the equity of redemption to accept an obligation against his will, or without an opportunity to be heard thereon. On the contrary, his right in such respect can only arise from some special power vested in him by an order of the court which appointed *Page 397 
him, coupled with its inherent power to enforce compliance with its mandate."
In Broadview Traders, Inc., v. Ramdee Realty Corp., supra, the president of the defendant corporation, who was occupying a part of the premises, was held in contempt for refusing to pay rent.
In Van Pelt v. Russell, 134 Ark. 236; 203 S.W. Rep. 267, a receiver of mortgaged premises occupied by the mortgagor brought suit to recover rent from the mortgagor upon his refusal to surrender possession. The suit was dismissed, the supreme court of Arkansas holding that there was no relation of landlord and tenant created by the order appointing the receiver, and that to create such relationship there must be either a valid contract between the parties to that effect or an order of the court directing the mortgagor to attorn to the receiver followed by acquiescence on the part of the mortgagor. See, also, 42 Corp.Jur. 127 § 1702.
These authorities, in my judgment, show clearly that ordinarily some special equity must be shown to warrant an order appointing a receiver and directing a mortgagor who is occupying the mortgaged premises as his home to pay rent; and that even after the appointment of a receiver the mortgagor occupant will not be compelled to pay rent until he is first ordered to do so by this court after an opportunity has been afforded him to be heard.
In the instant case the facts shown by the affidavits do not, in my judgment, warrant the appointment of a receiver to collect the rents from the owner occupant. The value of the property is placed at $8,000 by the petitioner's counsel and by one real estate dealer. No other evidence as to value is submitted. Although several other foreclosure suits are pending against the mortgagor involving other properties, it does not appear that the mortgagor is insolvent or that there is liable to be any deficiency in this suit. Under these circumstances I am unwilling to turn the mortgagor and his family out of doors, and the application for the appointment of a receiver will be denied. *Page 398