In the MATTER OF GLEN PROPER-
TIES, a New Jersey general partnership,
Debtor and Debtor-in-Possession/Appel-
lant.

Civ. No. 92–4918 (DRD).

United States District Court,
D. New Jersey.

Dec. 15, 1993.

A. Dennis Terrell, Russell J. Passamano,
Shanley & Fisher, P.C., Morristown, NJ, for
Glen Properties, debtor and debtor-in-pos-
session/appellant.

Michael A. Lampert, Sheryl L. Newman,
McManimon & Scotland, Newark, NJ, for
Teachers Ins. and Annuity Ass'n, creditor/ap-
pellee.

### OPINION

DEBEVOISE, District Judge.

This is an appeal from a final order and
judgment of the Honorable Novalyn L. Win-
field, United States Bankruptcy Judge, dated
October 29, 1993. Specifically, appellant,
Glen Properties ["Glen"], contends that
Judge Winfield erred in her decision (1) by
not applying the doctrine of judicial estoppel;
(2) in ruling that rents were not cash collat-
eral for purposes of 11 of U.S.C. § 363; and
(3) in ruling that Appellee, Teachers Insur-

ance and Annuity Association ["Teachers"] is the owner of the rents, rather than the holder of a security interest. For the reasons set forth in detail below, the judgment of the bankruptcy court is affirmed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Glen is a New Jersey partnership engaged in the business of commercial real estate development and management. In 1977 and 1986, Glen executed notes [the "Notes"] in favor of Teachers in the original principal amounts of $2,000,000 and $6,400,000 respectively. To secure payment of the notes, Glen executed Mortgage and Security Agreements in favor of Teachers on property known as Mountain Lakes Corporate Center I and Mountain Lakes Corporate Center II [the "Properties"]. Glen also executed in each case an "Assignment of Lessor's Interest in Lease(s)" ["the Assignments"].

Mountain Lakes Corporate Centers I and II are leased to several tenants. The minimum base rent under all the leases aggregates approximately $1,347,900 for 1993.

On or about March 18, 1993, Teachers filed complaints for foreclosure against Glen in the Chancery Division of the Superior Court of New Jersey in Morris County. Teachers alleged, among other things, that Glen had failed to make monthly installments of principal and interest on the Notes. On or about May 26, 1993, Teachers moved for the appointment of a rent receiver for the Properties. On June 28, 1993, the State Court granted the motion. On July 1, 1993, Glen filed a petition for relief under Chapter 11 of the Bankruptcy Code before the Receiver had taken possession of the Properties, had posted the bond required by the State Court's Order, had contacted tenants or had taken possession of the books and records for the Properties.

On August 25, 1993, Glen filed an emergent application for use of the rental payments as cash collateral. Teachers filed papers in opposition to the Application taking the position that it was the holder of a security interest in the rents on the Properties. No oral argument took place at the hearing on the matter on August 31. Instead, Glen

and Teachers entered into a consent order entitled "Consent Order Authorizing Use of Cash Collateral on an Interim Basis Pursuant to Section 363(c)(2)(B) of the Bankruptcy Code and Fixing Date for Final Hearing Thereon." (Glen Designation of Record No. 6). The final hearing was set for October 13, 1993.

On October 8, 1993, Teachers filed a brief in opposition to Glen's motion for use of cash collateral in which it argued, *inter alia,* that the rents were not property of the estate and, therefore, not cash collateral.

On October 13, 1993, Judge Winfield ruled in favor of Teachers finding that the rents did not constitute cash collateral under 11 U.S.C. § 363 because the rents were not property of the estate.

## STANDARD OF REVIEW

On appeal, the district court may set aside the bankruptcy court's factual findings only if they are clearly erroneous. Fed. R.Bankr.P. 8013. Issues committed to the discretion of the bankruptcy court may be disturbed only if the bankruptcy court abused its discretion. *In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir.1988). However, the bankruptcy court's legal conclusions are subject to the district court's plenary review. *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989) (citations omitted); *Hagaman v. State of New Jersey, Dep't of Environ. Protection and Energy,* 151 B.R. 696, 698 (D.N.J.1993).

## JUDICIAL ESTOPPEL

Glen contends that the the equitable doctrine of judicial estoppel should have been applied by the court below to bar Teachers from asserting positions "directly contrary to its prior positions." (Glen Br. p. 15). The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *Delgrosso v. Spang and Co.,* 903 F.2d 234 (3d Cir.1990).

Teachers asserts that this argument may not be presented by Glen because it failed to adequately preserve the issue in the bank-

ruptcy proceeding. Teachers notes that Glen did not make the argument in its papers to the court and only made a passing reference to the doctrine during oral argument. In fact, Glen's only reference to the issue came during oral argument when it stated "[w]e may [ ] under *Oneida* have [ ] judicial estoppel." (Glen Designation of Record No. 14, Oct. 13, 1993 Trans. at 26).

Teachers argues that a "passing oral argument reference does not adequately raise or preserve an argument for appellate review." (Glen Br. at 5–6). Glen counters that the issue was raised and that the contradictory positions taken by Teachers concerning its interest in the rents "has been an integral part of [its] argument from the first." (Teachers' Reply Br. at 2).

I believe that the issue of judicial estoppel was not adequately presented to the court below, and thus was not preserved. There is a substantial difference between raising an issue of law and arguing how and why it applies to a particular set of facts, and stating in one sentence during oral argument that it "may" apply. *Cf. United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir.1993), *cert. denied sub nom., Rivera v. United States*, —— U.S. ——, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993) ("an argument mentioned only in a footnote [is not] adequately raised or preserved for appellate review"). Furthermore, the circumstances justifying the resolution of an issue not passed on below, *i.e.*, where the proper resolution of the issue is beyond any doubt or where injustice might otherwise result, *see Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), do not exist here. Accordingly, I believe it would be improper to rule upon the issue of judicial estoppel.

### RENTS

 Glen argues that the court below erred in ruling that the rents paid on the Properties are not cash collateral. Judge Winfield determined that the rents are not cash collateral because on the date the petition was filed the Debtor had no legal or possessory interest in them. Glen argues that the ruling runs against the "overriding public policy behind Chapter 11 [of allowing] for the rehabilitation of debtors-in-possession." (Glen Br. at 24). Glen asserts that its sole income stream is the rents and that being deprived of those monies would foreclose any possibility of reorganization. "Teachers' arguments," according to Glen, "would ... make it impossible for any debtor that managed real estate to reorganize under Chapter 11." (*Id.*)

While I agree that the decision of the court below would appear to create serious obstacles to Glen's reorganization, the Third Circuit recently upheld a similar finding under Pennsylvania law in *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir.1993). In that case, the owner of an apartment complex defaulted on its mortgages. Some months later the owner petitioned for bankruptcy protection under Chapter 11 and asserted its right to use the rents as cash collateral in its reorganization. Although the Third Circuit did not specifically address the difficulty the owner would face in reorganizing without access to the rents, the court upheld the district court's determination that under Pennsylvania law, the rents were the property of the mortgagees.

In light of the court's decision in *Commerce Bank*, I do not believe that public policy considerations inherent in Chapter 11 may override the legitimate rights of a mortgagee to its own property. *See also Butner, infra* at 540.

Section 363(a) of the Bankruptcy Code defines "cash collateral" in relevant part as

cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

Section 552(b) states:

Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a

security arrangement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

*Id.* at § 552(b).

The paramount question in this case is whether the rents from the Properties should be considered cash collateral under section 363. This determination ultimately depends upon whether Glen had an "interest" in the rents at the time of its petition. Additionally, I could find that the rents were cash collateral if the Assignments created a "security interest" pursuant to 552(b).

According to Glen, "the Loan Documents themselves speak to a security interest." (Glen Br. at 33). It cites paragraph 13 of the Assignments which provide in relevant part:

That upon payment in full of all of the indebtedness secured by said Note and Mortgage or Deed of Trust and of all sums payable hereunder, this Assignment shall become void and of no effect.

(Glen Designation of Record No. 1).

Glen asserts that this is language of a grant of security, not a passing of title, and that if title truly had passed, Teachers would be required to transfer title back to Glen upon payment in full.

Teachers, on the other hand, argues that it has been presently assigned all the leases and all rents they produce. It points out that the Assignments provide, in words of the present tense, that Glen Properties, as assignor, "for value received, ... does hereby sell, assign, transfer, set over and deliver unto the Assignee," Teachers, all of the leases for the mortgaged property, "together with the immediate and continuing right to

collect and receive all of the rents, income, receipt, revenues, ..." arising from each assigned lease. (1977 and 1986 Assignment of Lessor's Interest in Lease(s)). Thus, Teachers argues, it had vested title to the leases and the rents at the time of the signing of the assignments and, therefore, Glen has no interest in the leases or rents.

Paragraph 5 of the assignments is also apposite to this discussion. It states in relevant part:

That so long as there shall exist no default by Assignor in the payment of any indebtedness secured hereby ... Assignor shall have the right under a license granted hereby ... to collect upon ... all of said rents, arising from or out of the said lease or any renewals or extensions thereof, and Assignor shall receive said rents, and shall hold same, as a trust fund to be applied, and Assignor hereby covenants to so apply same, [ ] to the payment of taxes and assessments upon said premises ... to the cost of [ ] insurance [and] maintenance and repairs ... to the satisfaction of all obligations under the said lease, and [ ] to the payment of interest and principal becoming due on the said Note and Mortgage before using any part of the same for any other purposes.

The court below found that "reading the assignment in its entirety it is clear ... that what was intended [was] an absolute assignment of rents." (Trans. p. 37) Furthermore, Judge Winfield found that the appointment of a receiver and the entry of an order in the State Court terminated Glen's rights to collect the rents. (*Id.* p. 38). Consequently, the assignment was "absolute." (*Id.* p. 38). These conclusions were correct.

In *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), a case involving a dispute between a bankruptcy trustee and a mortgagee over the right to rents, the Supreme Court ruled that the property interests of mortgagor and mortgagee are created and defined by state law. Furthermore, the Court instructed bankruptcy courts to take the necessary steps to "ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under the

state law if no bankruptcy had ensued." *Id.* at 56, 99 S.Ct. at 918–19.

Pursuant to *Butner* it is necessary to look to the respective rights of the parties to the rents under New Jersey law. Glen and Teachers have cited to New Jersey cases which they argue control the outcome in this situation. These cases lead to the conclusion that ultimately, the question of each party's rights in this situation, rests quite simply upon the language of the assignments in question. The Assignments do not create a security interest as Glen argues.[1] Instead, it is plain that the Assignments transferred all rights to rents to Teachers upon default, and that Glen had no "interest" in the rents at the time it filed its petition.

As set forth more fully above, the Assignments, both of which were recorded, state unequivocally that Glen, "FOR VALUE RECEIVED" does "Sell, Assign, Transfer, Set Over and Deliver [to Teachers] all leases. . . . . Together with the immediate and continuing right to collect and receive the rents. . . ." (1977 and 1986 Assignment of Lessor's Interest In Lease(s)). The documents further provide that Glen has the right, "under a license granted hereby," to collect rents "so long as there shall exist no default by Assignor in the payment of any indebtedness." (*Id.* ¶ 5).

The Assignments make it quite clear that title in the rents lay with Teachers. The language taken as a whole simply does not allow for any other interpretation. Glen's only interest in the rents was provided by the license. When that license terminated due to Glen's default, Glen simply had no present interest left.[2] Its only interest in the rents will accrue at some future date on which the underlying indebtedness will be paid in full and the Assignments will become

"void and of no effect." Glen's interest in the rents therefore, is a contingent future interest. Under these circumstances, Judge Winfield correctly found that the rents are not property of the estate and, thus, not cash collateral. Accordingly, the order of the court below is affirmed.

---

1. Although the courts in *Midlantic Nat'l Bank v. Sourlis*, 141 B.R. 826 (D.N.J.1992) and In re *Princeton Overlook Joint Venture*, 143 B.R. 625 (Bankr.D.N.J.1992) found that the assignments in those cases created a security interest and thus fell within 363(a) and 552(b), those cases are not controlling because the language in the Assignments here is dissimilar.

2. Even if Glen retained its license to collect and use rents until Teachers took affirmative steps to collect the rents itself—which was not required

by the explicit language of the Assignment— Teachers took affirmative steps and enforced its rights by obtaining the entry of an order in State Court appointing a receiver. Moreover, Judge Winfield's conclusion that the rent receiver's appointment was effective when the order was entered was correct. (Tr. at 39). *Cf. In re Holiday Isles, Ltd.,* 29 B.R. 827, 830 (Bankr.S.D.Fla.1983) (failure to file bond did not invalidate trustee's appointment).