

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-1995

# In Re: Jason Realty

Precedential or Non-Precedential:

Docket 94-5691

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"In Re: Jason Realty" (1995). *1995 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5691


In re: JASON REALTY, L.P.,

Debtor


FIRST FIDELITY BANK, N.A.

v.

JASON REALTY, L.P.,

Appellant


No. 95-5133


JASON REALTY, L.P.,

Appellant,

v.

FIRST FIDELITY BANK, N.A.


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 94-02857 and 94-06359)


Argued May 24, 1995

BEFORE: GREENBERG, ROTH and ALDISERT, <u>Circuit Judges</u>.
(Filed July 6, 1995)

Jonathan I. Rabinowitz (argued)
Bernard Schenkler
Paul Rosenblatt
Ravin, Sarasohn, Cook,
    Baumgarten, Fisch & Baime

103 Eisenhower Parkway
Roseland, New Jersey 07068

Attorneys for Appellant

Joseph Lubertazzi, Jr. (argued)
Sheila E. Calello
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Attorneys for Appellee


**OPINION OF THE COURT**


ALDISERT, Circuit Judge.

These consolidated appeals arise out of the bankruptcy of Jason Realty, L.P., a single-asset, New Jersey limited partnership that owns and operates a two-story retail and office building. On this property, First Fidelity Bank, N.A., holds a note, a mortgage, and an assignment of rents. At issue here is the assignment agreement, which assigned the rents, income and profits from the property to the bank, but granted Jason Realty the privilege to collect the rents until the event of default. Jason Realty defaulted prior to filing its Chapter 11 petition. The parties now dispute title to the rents.

The major question for decision is whether the assignment was an absolute assignment, as interpreted by the district court, or a collateral pledge, as construed by the bankruptcy court. We agree with the district court that the assignment vested First Fidelity with title to the rents and granted Jason Realty a

license to collect the rents until default. Upon default, Jason Realty had no interest in the rents. Accordingly, the rents are not property of the estate and are not available as cash collateral nor as a funding source for the debtor's reorganization plan. Therefore, we will affirm the orders of the district court.

The orders of the bankruptcy judge and the district court are final and appealable. Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36–37 (3d Cir. 1993). We have jurisdiction under 28 U.S.C. § 158(d). Because there is no dispute as to the facts presented below, the interpretation and application of the assignment contract and the Bankruptcy Code raise only questions of law subject to plenary review. See In re Deseno, 17 F.3d 642, 643 (3d Cir. 1994); FRG, Inc. v. Manley, 919 F.2d 850, 854 (3d Cir. 1990).

I.

The contest here is between Jason Realty, L.P., the debtor, and First Fidelity Bank, N.A., a creditor. Jason Realty is the owner of commercial real estate in Aberdeen, New Jersey. On September 14, 1989, Jason Realty executed a promissory note in favor of Howard Savings Bank for the repayment of approximately $750,000.00. On this date, it also executed two additional agreements: a mortgage and an assignment of leases. The assignment provided:

> THAT the Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and assigns to the Assignee the entire

> lessor's interest in and to those certain leases . . .
> TOGETHER with all rents, income and profits arising
> from said leases.

App. at 78.  The assignment included the following "terms,

covenants and conditions":

> So long as there shall exist no default by the
> Assignor in the payment of the principal sum, interest
> and indebtedness secured hereby and by said Note and
> Mortgage, . . . the Assignor shall have the privilege
> to collect . . . all rents, income and profits arising
> under said leases or from the premises described
> therein and to retain, use and enjoy the same. * * *
>
> Upon payment in full of the principal sum, interest
> and indebtedness secured hereby and by said Note and
> Mortgage, this Assignment shall become and be void and
> of no effect.

App. at 80 and 82.  On October 2, 1992, First Fidelity purchased

the note, mortgage and assignment from Howard Savings Bank.

Jason Realty defaulted on the note by failing to make the

principal and interest payments due on November 1, 1993, and each

month thereafter.  On January 28, 1994, First Fidelity sent

notices to the tenants of the mortgaged property demanding that

they pay their rent directly to First Fidelity.  On March 3,

1994, First Fidelity instituted a foreclosure action in a New

Jersey state court, and on March 18 filed an application for

appointment of a receiver.  One week thereafter, Jason Realty

filed a voluntary Chapter 11 petition.  Accordingly, the

foreclosure action was stayed.

On April 4, 1994, the bankruptcy court authorized Jason

Realty's preliminary use of the rents to pay expenses in

accordance with the budget submitted to the court and set a final

hearing date for April 25, 1994. At the final hearing, the bankruptcy court held that the rents, amounting to approximately $12,500 per month, constituted cash collateral and granted Jason Realty's motion for continued use of cash collateral. The court also directed Jason Realty to pay First Federal $6,041.00 per month as adequate protection. The court entered a final order authorizing the debtor's continued use of cash collateral. First Fidelity filed an appeal to the district court which reversed the bankruptcy court's order and held that the rents were not property of the estate and could not be used as cash collateral. The appeal at No. 94-5691 challenges this order.

On November 8, 1994, First Fidelity moved for relief from the automatic stay. Jason Realty filed a cross-motion seeking to compel First Fidelity to pay operating expenses for the real property under 11 U.S.C. § 506(c). On December 5, 1994, the bankruptcy court issued an order granting relief from the automatic stay and denying the cross-motion. Jason appealed to the district court, which affirmed. The appeal at No. 95-5133 challenges this order.

II.

The issue before us is whether the assigned rents should have been classified as property of the estate under 11 U.S.C. § 541(a)(1). Property of the estate consists of all property in which the debtor holds an interest upon the commencement of bankruptcy. See 11 U.S.C. § 541(a)(6). Generally, a debtor-in-possession, as trustee, see 11 U.S.C. § 1107(a), is free to use,

sell or lease property of the bankruptcy estate in the operation of the debtor's business.  See 11 U.S.C. § 363(c)(1).  Thus, classification of the instant rents is significant because the rents could become part of the bankruptcy estate and fund the debtor's reorganization.

The district court concluded that Jason Realty had no interest in the rents at the commencement of bankruptcy on March 25, 1994, because it had assigned the rents on September 14, 1989.  Although Jason Realty had a license to collect the rents, the license was revoked when Jason Realty defaulted on the note on November 1, 1993, prior to the commencement of bankruptcy.

Jason Realty argues (and the bankruptcy court held[1]) that the estate held an interest in the rents, because the assignment merely pledged the rents as security.  Jason Realty contends that it retained title to the rents and that the rents are now "cash

---

[1].  The bankruptcy court did not supply detailed reasoning in its oral opinion that held that this was not an absolute assignment. The court "incorporated the extensive analysis in the Debtor's papers as its own opinion," Appellant's Brief at 13, and stated:

> I don't think I can really add anything to the reasons stated in opposition by the debtor, because I believe they're all well stated and I believe the authorities are on point and correct.  The Pennsylvania case, the Third Circuit case [Commerce Bank] involving Pennsylvania law is not applicable here for the simple reason that Pennsylvania is a title state not a lien state.  And the Soreles (sic) case is on point and you can no more take the rents here without Court order than you could do it in foreclosure without getting a receiver appointed.  In any event, for all of the reasons stated in the debtor's opposing papers, the objection is overruled.

App. at 149.

collateral."  Cash collateral takes many forms and includes "the
... rents ... of property subject to security interest as
provided in section 552(b) of this title."  11 U.S.C. § 363(a).
Subject to certain conditions, a bankruptcy court may authorize
the use of cash collateral by a debtor.  Id.

We must determine whether the assignment conveyed title to
First Fidelity or, instead, pledged the rents as security.
Assignments of rents are interests in real property and, as such,
are created and defined in accordance with the law of the situs
of the real property.  Butner v. United States, 440 U.S. 48, 55
(1979); Commerce Bank, 5 F.3d at 37.  A federal court in
bankruptcy is not allowed to upend the property law of the state
in which it sits, for to do so would encourage forum shopping and
allow a party to receive "a windfall merely by reason of the
happenstance of bankruptcy."  Butner, 440 U.S. at 55.  Thus, in
determining whether the parties' assignment of rents transferred
title or, instead, created a "security interest," our goal must
be to ensure that First Fidelity "is afforded in federal
bankruptcy court the same protection [it] would have under state
law if no bankruptcy had ensued."  Id. at 56.  We thus turn to
New Jersey law to classify the parties' interests in the rents.


                              III.

It is settled in New Jersey that an assignment of rents
passes title to the assignee.  Paramount Bldg. & Loan Ass'n of
City of Newark v. Sacks, 107 N.J. Eq. 328, 152 A. 457 (N.J. Ch.
1930).  An assignment of a right is a manifestation of the

assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance.  Restatement (Second) of Contracts § 317; see generally Aronsohn v. Mandara, 98 N.J. 92, 484 A.2d 675, 678-79 (N.J. 1984). The precise wording determines the effect of the assignment.  See In re Winslow Center Assocs., 50 B.R. 679, 681 (Bankr. E.D. Pa. 1985); In re Pine Lake Village Apartment Co., 17 B.R. 829, 834 (Bankr. S.D.N.Y. 1982); Matter of Glen Properties 168 B.R. 537 (D.N.J. 1993).

An absolute assignment transfers title to the assignee upon its execution.  New Jersey Nat'l Bank & Trust Co. v. Wolf, 108 N.J. Eq. 412, 155 A. 372 (N.J. Ch. 1931).  An assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents.  In re Winslow Center Assocs., 50 B.R. at 681-82 (applying New Jersey law).  The instant assignment was quintessentially absolute, because it was a total assignment in per verba de praesenti: Jason Realty "hereby grants, transfers and assigns to the assignee the entire lessor's interest in and to those certain leases ... Together with all rents."  These parties mutually agreed in words of the present to transfer full title to the rents.  This exchange inescapably and unambiguously expressed an agreement to assign present title.

Notwithstanding this language, Jason Realty argues that the overall effect of the assignment was to create a pledge for security.  It contends that the assignment was collateral and

effected (only) a future transfer of rights dependent upon a later default. Jason Realty lists several characteristics of this assignment that, it suggests, indicate the assignment was collateral: (1) the assignment was part of a financing transaction; (2) the mortgage acknowledged that the assignment was given as "additional security"; (3) the assignment was made "for the purpose of securing [t]he payment of the principal sum, interest and indebtedness by a certain Note" and referenced "the indebtedness secured hereby"; (4) rights and liabilities were set forth in the event that First Fidelity acquired title (indicating a future event); (5) upon payment of the indebtedness, the assignment would be null and void, thus reverting the rents to Jason Realty; (6) the debt to First Fidelity was not extinguished or reduced upon execution of the assignment in 1989 or upon enforcement in 1994; (7) First Fidelity was obligated to apply the fruits of the assignment to the amount due on the note; and (8) Jason Realty's use of the rents was unrestricted.

Appellant's contention is unavailing. We are not moved by the fact that the assignment was part of a financing transaction and served as additional security for repayment of the note. An assignment clause within a mortgage may be independent of the mortgage security. New Jersey Nat'l Bank & Trust Company, 108 N.J.Eq. at 414; 155 A. at 373 (citing Stanton v. Metropolitan Lumber Company, 107 N.J. Eq. 345, 152 A. 653 (Ch. 1930)). Moreover, we are impressed that the instant assignment was contained in an agreement separate from the mortgage. First Fidelity proceeded here as an assignee of rents under rights

conferred on a special instrument bearing the title "Assignment of Lease or Leases," App. at 78, and not in its capacity as a mortgagee enforcing rights contained in the instrument bearing the title "mortgage." App. at 55.

It also is well-established under New Jersey law that an absolute assignment may have conditions. Stanton, 107 N.J. Eq. at 348, 152 A. at 654-55. The fact that a right is conditional on the performance of a return promise or is otherwise conditional does not prevent its assignment before the condition occurs. See Restatement (Second) of Contracts, §§ 320 and 331. Under New Jersey law, an assignment may be conditioned upon default. In Stanton, the court interpreted an assignment clause in a mortgage that provided "if default be made . . . said rents and profits are . . . assigned to the mortgagee." 108 N.J.Eq. at 346; 155 A. at 654. The court stated:

> Th[is] assignment, though conditional, became absolute upon default of the mortgage debt, and was valid and enforceable against the assignor; . . . As the rents accrued, after the default, the ownership was in the assignee; . . .
>
> The assignment is not, as contended, an assignment of rents as may accrue after the mortgagee should enter into possession, and conditional upon its entering into possession or upon the appointment of a receiver. The provisions of the mortgage above quoted grants the right to take possession upon default; in addition the rents are assigned upon default; . . . The assignment of rents is distinct and independent of the means granted the mortgagee to collect them. The title to them was to pass to the mortgagee upon default whether the procedure was or not adopted, not that it was to pass only if it was set in motion.

*Id.* at 348, 152 A. at 654–55 (emphasis added). We have not been directed to any New Jersey authority that overrules, amends or in any way dilutes these authorities.

The instrument evidences an absolute assignment of title to the rents, with the assignor receiving a license to collect the rents. Our reasoning is informed by Judge Debevoise of the District of New Jersey, who interpreted a similar assignment clause in <u>Matter of Glen Properties</u>, 168 B.R. 537 (D.N.J. 1993). That assignment provided that the assignor "for value received . . . does hereby sell, assign, transfer, set over and deliver unto the Assignee all leases . . . together with the immediate and continuing right to collect and receive all of the rents." <u>Id.</u> at 540–41. The assignment also provided "That so long as there shall exist no default by Assignor in the payment of any indebtedness secured hereby, Assignor shall have the right under a license granted hereby . . . to collect upon . . . all of said rents." <u>Id.</u> at 540. We fail to perceive a meaningful difference between the assignment clause in <u>Glen Properties</u> and the assignment presently before us, and concur in Judge Debevoise's conclusion that it is "quite clear" that such language evidences an absolute assignment. <u>Id.</u> at 541.

Accordingly, the district court properly concluded that the rents were assigned to First Fidelity and were not property of the bankruptcy estate.

IV.

In part III, we conclude that the law of New Jersey is clear. And, of course, the bankruptcy courts are strictly bound to apply this state's law to property interests under the teachings of Butner. Yet the bankruptcy judge here concluded that an assignment, absolute on the face of the instrument, was collateral. Apparently, this result is borne of misgivings on the part of the bankruptcy court regarding the repercussions that our holding in Commerce Bank, interpreting Pennsylvania law, would have on single-asset reorganizations in New Jersey. See Commerce Bank, 5 F.3d at 38. Although our decision here may create serious obstacles for debtors whose sole income stream is rents, Butner mandates that we interpret the assignment as New Jersey courts would construe it outside the bankruptcy context. Our review of the bankruptcy court's holding in this case and of those in In re Mocco, 176 B.R. 335 (Bankr. D.N.J. 1995) and in In re Princeton Overlook Joint Venture, 143 B.R. 625 (Bankr. D.N.J. 1992), suggest the need to reemphasize the interaction of the mandates of the Bankruptcy Code, the principle of Butner and the doctrine of stare decisis.[2]

---

[2]. In In re Mocco, 176 B.R. 335 (Bankr. D.N.J. 1995), for example, a bankruptcy court was faced with an assignment almost identical in language to the one before us. In its interpretation, the bankruptcy judge refused even to address the reasoning of the Chief Judge of the District of New Jersey in this case, stating, "this court is not bound by Jason, an unpublished opinion." Id. at 342 n.4. The bankruptcy judge also refused to follow the New Jersey district court precedent in the published opinion in Matter of Glen Properties, saying flatly, "This court disagrees." Id. at 345.

In a reorganization under Chapter 11, a bankruptcy court's objective is to preserve, if possible, an ongoing business. The perennial problem facing bankruptcy judges is to strike a proper balance between rights of the creditor and debtor. To do this, the judges make wide use of equitable and discretionary powers as provided by the Bankruptcy Code and Rules. Judges recognize that in many cases, especially single-asset cases involving commercial real estate, the use of cash collateral by the debtor is essential to a successful reorganization. They recognize that the only source of potential cash collateral is the rent generated by the leases. Understandably, they will endeavor to craft a recovery that will permit some use of the rents by the debtor.

Under New Jersey law, however, such a goal cannot be reached by merging the rights of an assignee of leases with those of a mortgagee. These concepts are not fungible, but embrace separate and distinct attributes of property law, as well as degrees of gradation of title and basic differences as to how and when title passes between the debtor and the secured creditor. Thus, in the case at bar, although it was clear that First Fidelity was proceeding as an assignee of leases, the bankruptcy judge refused to follow the teachings of Commerce Bank on the basis that mortgages are treated differently in New Jersey than in Pennsylvania: Pennsylvania is "a title state and not a lien state." App. at 149. The judge confused assignee apples with mortgagee oranges.

We have found this same confusion in other cases where there is a substantial issue of an assignee's right to rents. See, e.g., In re Mocco and In re Princeton Overlook Joint Venture. There is often a failure to recognize the differences between those cases where the mortgagee attempts to collect rents solely on the strength of the mortgage instruments, see Eisen v. Kostakos, 282 A.2d 421 (N.J.App. Div. 1971); Scult v. Bergen Valley Builders, Inc., 197 A.2d 704 (N.J.App. Div. 1964), and instances where the creditor proceeds solely, as here, as an assignee under an assignment of rents clause, see Stanton v. Metropolitan Lumber Co., 152 A. 653 (N.J.Ch. 1930); In re Winslow Center Assoc., 50 B.R. 679 (Bankr. E.D.Pa. 1985).

As we note, this confusion appears in the present case. In its decision, the bankruptcy court relied on Midlantic Nat'l Bank v. Sourlis, 141 B.R. 826 (D.N.J. 1992), in which the court addressed whether the assignee/creditor had an interest in rents for the purposes of Section 363. In Sourlis, the court held that an assignee had "a perfected security interest in the rents as of the date of proper state-law recordation." Id. at 834. Although the court in Sourlis spoke only of creditors having security interests in rents, the court did not address the possibility that a debtor could assign all of its rights in rents to the creditor. It therefore provides little guidance here.[3]

_____

[3]. The court in Sourlis does, however, give an accurate summary of New jersey law on the distinction between the situations in which a mortgagee and in which an assignee wish to collect rents:

> Under New Jersey law, a mortgagee must take
> affirmative steps, such as taking possession of the

Moreover, the facts in Sourlis do not form an appropriate analogy to the facts before us, because the creditor took no active steps pre-petition to implement the assignment clause. The creditor did not direct the tenants to make the payments to it prior to the commencement of any bankruptcy proceedings. The creditor "did not seek to take possession of or manage the properties or seek the appointment of a receiver prior to the debtor's filing a voluntary petition in bankruptcy under Chapter 11." Id. at 828. Apparently, the creditor's first attempt to assert ownership rights of the rents was in its motion to restrain the debtor's use of the rents as cash collateral in the bankruptcy proceedings.

In conclusion, we have discussed this question at some length in order to avoid future confusion. It is important in interpreting New Jersey law that the otherwise worthy desire for achieving a reorganization under Chapter 11 should not trump the rights of an assignee of a lease under a pre-petition assignment.

V.

(..continued)
property or securing the appointment of a receiver, to entitle the mortgagee to collect rents from the mortgaged property. Eisen, Scult. However, also under New Jersey law, a mortgagee with an assignment of rents is entitled to enforce its assignment and collect the rents upon default without taking possession of the property or seeking the appointment of a receiver. Stanton, Winslow.

Id. at 831-32.

We are satisfied that our determination of the appeal at No. 94-5691 controls the outcome of the appeal at No. 95-5133.

A party is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) under the following standard:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditions such stay --

* * * *

(2) with respect to a stay of an act against property under subsection (a) of this section, if --

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

With respect to the first prong, Jason Realty concedes that it has no equity in the real property. In order to satisfy its burden on the second prong, Jason Realty had to demonstrate that there was "a reasonable possibility of a successful reorganization within a reasonable time." United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 376 (1988). Jason Realty's proposed plan for reorganization uses the rents assigned to First Fidelity to fund the plan. We previously have held that when rents are not property of the debtor's estate, they may not be used to fund a plan of reorganization. Commerce Bank, 5 F.3d. at 38. As a panel of this court, we lack the power to overrule the decision of a previous panel; moreover, even if

we had the power, we are not inclined to accept Appellant's argument. We are satisfied that no provision of the Bankruptcy Code permits Jason Realty to "create" an interest in the rents to enable it to use First Fidelity's property in a plan of reorganization. In the circumstances of this case, the rents are unavailable for use, allocation or utilization in any plan proposed by Jason Realty.

We have considered all arguments advanced by the parties and conclude that no further discussion is necessary. The judgments of the district court will be affirmed in all respects.