## MacARTHUR EXECUTIVE ASSOCIATES, Appellant,

v.

## STATE FARM LIFE INSURANCE CO., Appellee.

Civ. A. No. 95–5107 (AJL).

United States District Court, D. New Jersey.

Dec. 15, 1995.

Robert A. Drexel, Hackensack, New Jersey, for Appellant.

Joseph Lubertazzi, Jr., Nancy A. Washington, McCarter & English, Newark, New Jersey, for Appellee.

## OPINION

LECHNER, District Judge:

This is an appeal by MacArthur Executive Associates ("MacArthur") of two final orders of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). MacArthur appeals an order of the Bankruptcy Court, dated 26 July 1995, holding that the appellee, State Farm Life Insurance Company ("State Farm") held an absolute assignment of leases and rents. MacArthur also appeals an order of the Bankruptcy Court, dated 29 August 1995, granting State Farm relief from a stay (the "Stay") granted pursuant to Section[1] 362.[2] Appellate jurisdiction in this court exists under 28 U.S.C. § 158(a). For the reasons set forth below, the orders of the Bankruptcy Court are affirmed.

*Facts*

*A. Background*

MacArthur is a general partnership of two individuals, Paul Hartman and David Hirschman. Hirschman Cert., ¶ 1; Gardner Aff., Ex. A. MacArthur owns one asset, a commercial office building, located at 1200 MacArthur Boulevard in Mahwah, New Jersey (the "Property"). Hirschman Aff., ¶ 1. On 30 May 1989, MacArthur executed a promissory note (the "Note") in favor of the John H. Holler Company ("Holler"), in the amount of

---

1. All references to "Section" herein are to Title 11 of the United States Code.

2. In support of these appeals, MacArthur submitted: Brief in Support of MacArthur Executive Associates' Appeal From an Order of the Bankruptcy Court Granting Appellee an Absolute Assignment of Rent and Other Relief, dated 15 September 1995 (the "First Moving Brief"); Response of MacArthur Executive Associates to Appellee's Brief, dated 13 October 1995; Brief in Support of MacArthur Executive Associates' Appeal From an Order of the Bankruptcy Court Dissolving the Automatic Stay, dated 20 October 1995 (the "Second Moving Brief"); a letter-brief in reply, dated 21 November 1995.

In opposition to these appeals, State Farm Submitted: Brief of Appellee State Farm Life Insurance Company, dated 6 October 1995; Brief of Appellee State Farm Life Insurance Company, dated 8 November 1995.

In addition, the opinions of the Bankruptcy Court, dated 26 July 1995 (the "First Opinion") and 29 August 1995 (the "Second Opinion"), were reviewed. The Second Opinion is a transcript of a hearing; the Bankruptcy Court ruled from the bench on that date.

Also reviewed were various documents filed with the Bankruptcy Court, including the Affidavit of W. Thomas Gardner in Support of State Farm Life Insurance Company's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d), dated 18 July 1995 (the "Gardner Aff.") attaching exhibits A through K; Certification of David Hirschman in Opposition to Motion by State Farm Life Insurance Company to Vacate Automatic Stay, dated 21 August 1995 (the "Hirschman Cert.").

$10,100,000.00. Gardner Aff., Ex. A. On the same date, MacArthur executed a "Mortgage and Security Agreement" (the "Mortgage and Security Agreement"), *id.*, Ex. B & C, an "Assignment of Lessor's Interest In Lease(s)" (the "Assignment of Leases"), *id.*, Ex. D, and an "Assignment of Rents" (the "Assignment of Rents"), *id.*, Ex. E, all in favor of Holler.

On 30 May 1989, Holler assigned the Note, the Mortgage and Security Agreement, the Assignment of Leases and the Assignment of Rents to State Farm. *Id.*, Ex. F.

The Mortgage and Security Agreement provides:

> As further security for payment of the indebtedness and performance of the obligations ... secured hereby, Mortgagor hereby assigns to Mortgagee all leases already in existence and to be created in the future, together with all rents to become due under existing and future leases. This assignment, however, shall be operative only in the event of the occurrence of an Event of Default hereunder....
>
> \*   \*   \*   \*   \*   \*
>
> The rights and remedies of Mortgagee hereunder shall be in addition to every other right and remedy now and hereafter provided by law; the rights and remedies of Mortgagee shall be cumulative and not exclusive one of the other....

Gardner Aff., Ex. B, at 19, 20.

The Mortgage and Security Agreement also grants a security interest to Holler (and later, to State Farm) in all personalty owned by MacArthur on the Property, in addition to "[a]ll leases and contracts already in existence and those to be created in the future, together with all rents to become due under existing or future leases." Gardner Aff., Ex. C (UCC–1 Financing Statement, Schedule B).

> The Assignment of Leases provides:
>
> ... Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers, and assigns to Assignee the entire lessor's interest in and to a certain lease.... Together with all rents, income and profits arising from the leases and renewals

thereof and together with all rents, income and profits for the use and occupation of the premises described in the leases or in the mortgage hereinafter referred to and, at the option of the Assignee, from all leases upon the premises which may be executed in the future during the term of this Assignment....

> \*   \*   \*   \*   \*   \*
>
> So long as there shall exist no default by Assignor in the payment of the principal sum, interest and indebtedness secured hereby and by the [N]ote and [M]ortgage or in the performance of any obligation, covenant or agreement herein or in the [N]ote and [M]ortgage or in the lease[s] contained on the part of the Assignor to be performed, Assignor shall have the right to collect ... all rents, income and profits arising under the lease or from the premises described therein and to retain, use and enjoy the same.
>
> \*   \*   \*   \*   \*   \*
>
> Nothing contained in this assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the [N]ote and [M]ortgage, and this assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the [N]ote and [M]ortgage.

Gardner Aff., Ex. D, at 1–3, 6.

The Assignment of Rents includes similar language:

> [T]he Undersigned ... does hereby sell, assign and transfer unto the Mortgagee all the rents, issues and profits now due and which may be hereafter become due under or by virtue of any lease, ... it being the intention hereby to establish an absolute transfer and assignment of all the leases and agreements, and all the avails thereof, to the Mortgagee....
>
> \*   \*   \*   \*   \*   \*
>
> Although it is the intention of the parties that this assignment of rents shall be a present assignment, it is expressly under-

stood and agreed, anything herein contained to the contrary notwithstanding, that the Mortgagee shall not exercise any of the rights and powers conferred upon it herein until and unless a default shall occur in the payment of interest or principal due under the [N]ote secured by the above described Mortgage or in the performance · or observance of any of the conditions or agreements of any instrument now or at any time securing the [N]ote or the debt secured or evidenced thereby or by any extension thereof and nothing herein contained shall be deemed to effect or impair any rights which the Mortgagee may have under the [N]ote and Mortgage or any other instrument herein mentioned.

\*      \*      \*      \*      \*      \*

It is understood and agreed that the provisions set forth in this assignment herein shall be deemed as a special remedy given to the Mortgagee, *and shall not be deemed exclusive of any of the remedies granted in the above described Mortgage, but shall be deemed an additional remedy and shall be cumulative with the remedies therein granted.*

Gardner Aff., Ex. E, at 1–3, 5 (emphasis added).

### B. *Procedural History*

MacArthur defaulted on its obligations under the Mortgage and Note, beginning on 1 April 1994.[3] On that date, and thereafter, MacArthur failed to make the full monthly payments due to State Farm. First Opinion at 3.

On 16 November 1994, State Farm commenced a foreclosure proceeding (the "Foreclosure Proceeding") in the Superior Court of New Jersey, Chancery Division, Bergen County (the "Superior Court"). Gardner

Aff., ¶ 12. By order, dated 6 January 1995, the Superior Court appointed a rent receiver (the "Receiver"), following a motion by State Farm. *Id.,* ¶ 13 & Ex. J. According to the terms of that order, the Receiver was entrusted with possession, management and control of the Property as well as collection of rent (the "Rents") from lessees of the Property. First Opinion at 4. The Superior Court entered an order, dated 1 May 1995, granting summary judgment on all counts in the Foreclosure Proceeding. Gardner Aff., ¶ 14.

On 2 June 1995, MacArthur filed a voluntary petition in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which operated as the Stay of the proceedings in the Superior Court. First Opinion at 4–5; *see* Section 362(a).

On 15 June 1995, MacArthur filed a motion with the Bankruptcy Court seeking a determination that the Rents were cash collateral, as Section 363(a) defines that term, for turnover of estate property pursuant to Sections 542 and 543(a) and for the appointment of a property management company. First Opinion at 1. On the following day, State Farm filed with the Bankruptcy Court a motion to excuse the Receiver from complying with Section 543, which precludes a custodian from disbursing a debtor's property and requires turnover of that property to the trustee. These motions required the Bankruptcy Court to decide whether the Rents were part of the estate of the debtor (the "Estate") and whether the Assignment of Rents and Assignment of Leases were absolute or collateral. First Opinion at 5.

The Bankruptcy Court issued the First Opinion, dated 26 July 1995, which authorized the Receiver to remain in place and held the Assignment of Rents[4] was absolute.

---

3. The parties agreed to modifications of the Mortgage on 15 October 1991 and again on 1 April 1993. Gardner Aff., ¶ 10 & Ex. G, H. On 1 April 1993, the parties also modified payment terms on the Note. *Id.,* ¶ 11 & Ex. I.

4. The First Opinion discussed only assignment of Rents, although that opinion reviewed language from *In re Jason Realty, L.P.,* 59 F.3d 423, 426 (3d Cir.1995), some of which concerned assignment of leases. *See* First Opinion at 8. On

appeal, MacArthur only couches its argument in terms of assignment of the Rents, *see* First Moving Brief at 9–10, although MacArthur's papers compare language from the Assignment of Leases in this matter with language from the assignment of leases at issue in *Jason Realty,* 59 F.3d at 426. *See* First Moving Brief at 10. A review of the Assignment of Leases and the Assignment of Rents, *see supra* at 191–92, indicates the language relating to assignments to State Farm is similar in both documents; moreover, the Assignment of Leases contains within it an assign-

*Id.* at 10. In deciding that State Farm held absolute title to the Rents and that the Rents were not property of the Estate, the Bankruptcy Court denied MacArthur's request to use the Rents as cash collateral or to appoint a property management company. *Id.* MacArthur filed an appeal of the First Opinion (the "First Appeal") on 29 August 1995.

Meanwhile, on 18 July 1995, State Farm filed a motion in the Bankruptcy Court, seeking relief from the Stay pursuant to Section 362(d). State Farm filed that motion because, notwithstanding the summary judgment in its favor in the Foreclosure Proceeding, State Farm could not foreclose on the Property until the Stay was lifted. The Bankruptcy Court ruled from the bench on 29 August 1995 and granted State Farm relief from the Stay. Second Opinion at 25–26. MacArthur appealed that decision (the "Second Appeal") on 6 October 1995. Following a status conference on 8 November 1995, the First Appeal and the Second Appeal were consolidated by order. Oral argument on both appeals was heard on 11 December 1995.

*Discussion*

A. *Standard for Review of Determination of Bankruptcy Court*

The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. The factual determinations of the bankruptcy court must be given conclusive effect unless they are "clearly erroneous." *In re Brown,* 951 F.2d 564, 567 (3d Cir.1991); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989). Legal conclusions of a bankruptcy court, however, are subject to plenary review by the district court. *In re DeSeno,* 17 F.3d 642, 643 (3d Cir.1994); *FRG, Inc. v. Manley,* 919 F.2d 850, 854 & n. 8 (3d Cir.1990). Where a case presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222–23 (3d Cir.1989).

B. *The First Appeal*

MacArthur asserts that State Farm holds only a security interest in the Rents, and that the Bankruptcy Court erred in concluding the Assignment of Rents was absolute. First Moving Brief at 2. MacArthur argues it is entitled to the Rents pursuant to Sections 542 and 543(a), and that the Rents constitute "cash collateral" within the meaning of Section 363, which provides:

"[C]ash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the [E]state and an entity other than the estate have an interest and includes the proceeds, ... rents or profits of property ... whether existing before or after the commencement of a case under this title.

Section 363(a). Simply stated, the issue to be decided is whether MacArthur or State Farm holds title to the Rents. MacArthur argues that an assignment of rent is absolute only where the "language that creates such right ... is precise and unambiguous." First Moving Brief at 10 (citing *In re Donato,* 170 B.R. 247, 253 (Bankr.D.N.J.1994)). MacArthur argues that the documents in this matter, read together, do not "unambiguously express[ ] an agreement to assign present title." *Id.* (quoting *Jason Realty,* 59 F.3d at 427). MacArthur argues there is a conflict between the Assignment of Leases and the Mortgage and Security Agreement, that the former establishes an assignment, while the latter establishes only a security interest. It argues that because of a "conflict" between the two, the latter controls. *Id.* at 14–15. "The Assignment of Leases ... provides ... 'In case of any conflict between the terms of this instrument and the terms of the [M]ortgage ... the terms of the [M]ortgage shall prevail.'" *Id.* at 11 (quoting Assignment of Leases, *see* Gardner Aff., Ex. D, at 7). MacArthur asserts there is a conflict within the Mortgage and Security Agreement, quoting the following:

[T]o secure payment of the indebtedness and in consideration of the aforesaid principal sum and intending to be legally

ment of the Rents from the Leases. *See supra* at 191. Accordingly, a separate discussion of the merits for the Assignment of Leases and Assignment of Rents is unnecessary.

bound hereby, mortgagor does hereby grant, convey and mortgage unto Mortgagee that certain lot or parcel of land and improvements consisting of a three-story office building ... [t]ogether with all and singular the tenants, hereditaments, rights-of-way, easements, and appurtenances thereunto ... and the ... *rents issues, and profits* therefrom....

\* \* \* \* \* \*

*This [M]ortgage creates a security interest in the property included in the term Premises and constitutes a security agreement under the New Jersey Uniform Commercial Code. Mortgagor shall execute, file and refile such financing statements or other security agreements as Mortgagee shall require from time to time with respect to [the Property].*

First Moving Brief at 11–12 (quoting Mortgage and Security Agreement, *see* Gardner Aff., Ex. B, at 1, 2, 11) (emphasis in First Moving Brief). MacArthur observes that the Financing Statements secure "Leases and contracts already in existence and those to be created in the future, together with all rents to become due under existing or future leases." *Id.* at 12 (quoting UCC–1 Financing Statement, *see* Gardner Aff., Ex. C, at 1). MacArthur also quotes the following language in the Mortgage and Security Agreement: "As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, Mortgagor hereby assigns to Mortgagee all leases...." First Moving Brief at 12–13 (quoting Mortgage and Security Agreement, *see* Gardner Aff., Ex. B, at 19). From this, MacArthur concludes "there is inconsistency within the Mortgage and Security Agreement" as well as inconsistency between that document and the Assignment of Leases. *Id.* at 13. Because these documents, read together, do not "unambiguously express[ ] an agreement to assign present title," *id.* at 10 (quoting *Jason Realty,* 59 F.3d at 427), MacArthur argues that basic contract law requires these documents to be read together, with the ambiguities construed against the drafter. *Id.* at 15. MacArthur also observes that the documents state that the terms of the Mortgage and

Security Agreement prevail in the event of a conflict between that document and other documents, and also observes the Mortgage and Security Agreement provides that State Farm has only a security interest in the Rents and Leases. *Id.* at 16.

Both parties look to *Jason Realty* for support. MacArthur argues that, under *Jason Realty,* an agreement to assign the Rents must be unambiguous to be absolute. First Moving Brief at 10 (citing *Jason Realty,* 59 F.3d at 427). *Jason Realty* concerned a single-asset limited partnership which owned and operated a building in New Jersey for retail and office use. 59 F.3d at 425. The *Jason Realty* creditor held a note, a mortgage and an assignment of leases which included an assignment of rents. In that case, the assignment agreement assigned the leases, rent, income and profits from the property to the creditor, but granted the debtor the privilege to collect and keep the rents unless a default occurred. The debtor defaulted, filed for protection under Chapter 11 shortly thereafter, and argued the assignment was merely a collateral pledge. The creditor argued the assignment was absolute, that title in the leases and rents was vested in the creditor and that the debtor merely held a revocable license to collect the rents. *Id.* As MacArthur observes, however, the *Jason Realty* creditor did not have a security interest in leases or rents from the property. First Moving Brief at 10, 16; *see Jason Realty,* 59 F.3d at 425.

Three documents established the *Jason Realty* debtor-creditor agreement: (1) a note, (2) a mortgage on the property, and (3) an assignment of leases. 59 F.3d at 426. At the outset, *Jason Realty* observed that property of the estate consists of all property in which a debtor holds an interest upon the commencement of the case. *Id.* (citing Section 541(a)(1), (6)). Observing that assignments of rents are interests in real property, *Jason Realty* concluded that state law determines whether the creditor held an absolute assignment or merely a security interest in the leases and rents. *Id.* at 427 (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d

34, 37 (3d Cir.1993)). " "'It is settled in New Jersey that an assignment of rents passes title to the assignee.'" *Id.* (quoting *Paramount Bldg. & Loan Ass'n of Newark v. Sacks,* 107 N.J.Eq. 328, 152 A. 457 (N.J.Ch. 1930)).

■ *Jason Realty* held that, under New Jersey law, "[a]n assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents" and if the parties "mutually agree[ ] in words of the present to transfer full title to the rents." 59 F.3d at 427 (citations omitted). In the instant matter, the Bankruptcy Court compared the language in the Assignment of Leases with the language in the *Jason Realty* assignment of leases (where the Circuit determined the assignment was absolute) and concluded the Assignment of Leases to State Farm was absolute. First Moving Brief at 10; *see* First Opinion at 9–10. MacArthur has not argued that the language of the Assignment of Leases, standing alone, does not create an absolute assignment. After analyzing New Jersey law, *Jason Realty* concluded an absolute assignment of leases could be conditional upon default by the debtor, as was the case here. 59 F.3d at 428–29.

It begs the question to allege a conflict between the Mortgage and Security Agreement and the Assignment of Leases or Assignment of Rents. The Mortgage and Security Agreement states: "[T]he rights and remedies of Mortgagee shall be cumulative and not exclusive one of the other...." Gardner Aff., Ex. B, at 20 (Mortgage and Security Agreement). The Assignment of Leases provides: "[T]his assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the [N]ote and [M]ortgage." *Id.,* Ex. D, at 6. Moreover, the Assignment of Rents, a separate document, provides:

> It is understood and agreed that the provisions set forth in this assignment herein shall be deemed as a special remedy given to the Mortgagee, and shall not be deemed exclusive of any of the remedies granted in the above described Mortgage, but shall be deemed an additional remedy and shall be cumulative with the remedies therein granted.

*Id.,* Ex. E, at 5. The Assignment of Rents, even though it contains conditions, is nonetheless absolute. *Jason Realty,* 59 F.3d at 428. MacArthur did not own the Rents. Title to the Rents passed to Holler (and later to State Farm) upon execution of the Assignment of Rents. *Id.*

Were MacArthur's argument accepted, a creditor would be forced to elect between taking a security interest and an absolute assignment of rents, notwithstanding its efforts to provide for both remedies, in case, for example, one of the two remedies is later deemed defective. As for MacArthur's argument that the Mortgage and Security Agreement is internally inconsistent because it provides for both a security agreement and an absolute assignment of the Rents, the Circuit held that a mortgage may contain two independent remedies for the creditor. *Jason Realty,* 59 F.3d at 428 ("An assignment clause within a mortgage may be independent of the mortgage security") (citations omitted). Without a conflict between these two remedies, there is no ambiguity in these documents, and the Assignment of Leases and Assignment of Rents are valid under New Jersey Law. *Jason Realty,* 59 F.3d at 428–29. Accordingly, it is unnecessary to address MacArthur's argument that ambiguities must be construed against the drafter under New Jersey contract law. Because State Farm holds title to the rents and leases, they are not property of the Estate under Section 541; the Rents are not cash collateral under Section 363. The judgment of the Bankruptcy Court in the First Opinion is therefore affirmed.

## C. *The Second Appeal*

■ The Second Appeal concerns State Farm's motion for relief from the Stay, pursuant to Section 362(d), which the Bankruptcy Court granted, by ruling from the bench on 29 August 1995. As MacArthur acknowledges, the Second Appeal turns upon whether State Farm holds an absolute assignment of the Rents. Second Moving Brief at 9. Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest....

"Adequate protection" can be provided by "requiring the trustee to make a cash payment or periodic cash payments to [a creditor]...." Section 361(1). As MacArthur concedes, it is unable to provide adequate protection to State Farm without title to the Rents. Second Moving Brief at 9. Without the Rents, MacArthur's argument that it can effectively reorganize within a reasonable time, *see* Section 362(d)(2)(B), must be rejected. The judgment of the Bankruptcy Court concerning the Stay is affirmed.

*Conclusion*

For the reasons set forth above, judgments of the Bankruptcy Court in the First Opinion and Second Opinion are affirmed.