**FIRST FIDELITY BANK, N.A., a national banking association, Plaintiff/Appellant,**

v.

**ELEVEN HUNDRED METROPLEX ASSOCIATES, Debtor/Appellee.**

No. 95 Civ. 4664 (SS).

United States District Court, S.D. New York.

Nov. 28, 1995.

McCarter & English, Joseph Lubertazzi, Jr., Newark, NJ, for Plaintiff.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., Michael S. Schreiber, New York City, for Debtor.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiff/appellant, the First Fidelity Bank ("FFB" or "Bank"), appeals from an order of the United States Bankruptcy Court entered on the record on May 11, 1995 (the "Order") granting the motion of debtor Eleven Hundred Metroplex Associates (the "Debtor") to use certain rental income as cash collateral. For the reasons discussed below, FFB's appeal is **GRANTED** and the Order of the Bankruptcy Court is **REVERSED**.

## BACKGROUND

The Debtor is a New Jersey general partnership involved in commercial real estate. On December 31, 1990, the Debtor borrowed $14.5 million from plaintiff/appellant FFB to purchase Metroplex Center, a granite and glass office building in Monmouth Junction, New Jersey. The Debtor signed two promissory notes (the "Notes") for repayment of the principal, and executed two other documents: a mortgage (the "Mortgage"), which granted plaintiff a security interest in Metroplex Center, and a Collateral Assignment of Lease or Leases (the "Assignment of Rents"), the meaning of which is at issue here.

The Debtor's fortunes took a downturn in late 1994 when its largest tenant, the Federal Deposit Insurance Corporation, announced that it would not renew its leases and would vacate the Metroplex Center. Soon afterward, the Debtor's two other tenants also decided not to renew their leases. The Debtor informed FFB of these developments, and the Bank responded that it would file a foreclosure action because it was concerned that the Debtor would file for bankruptcy. (D. at 199.)[1] As a result of FFB's response, the Debtor did not pay real estate taxes due on

1. "D. at...." refers to the Designation of Record on Appeal and Statement of Issues filed by plaintiff in this action.

February 1, 1995, and did not make a mortgage payment due on March 1, 1995. *(Id.)*

On March 16, 1995, the Bank filed a foreclosure action in New Jersey state court. As part of that action, the Bank sought the appointment of a receiver to collect rents from Metroplex Center. On March 17, 1995, the Bank sent a notice to the Center's tenants instructing them to pay their rents directly to the Bank.

On April 12, 1995, the Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The petition stayed the Bank's motion for appointment of a rent receiver. On May 11, 1995, the Debtor sought permission from the United States Bankruptcy Court of the Southern District of New York to use the rents from Metroplex Center as "cash collateral" during reorganization. FFB opposed the request. Cash collateral is defined in 11 U.S.C. § 363(a) as "cash ... or other cash equivalents ... in which *the estate* and *an entity other than the estate* have an interest." (Emphasis added). The Bankruptcy Code allows the Debtor to use such property under certain circumstances. During the hearing before the Bankruptcy Court, it was undisputed that the Bank had an interest in the rents under the Assignment of Rents; the sole question was whether the estate also had an interest.

At the conclusion of the May 11, 1995, hearing on the Debtor's cash collateral motion, Bankruptcy Judge Burton R. Lifland held that the Assignment of Rents created merely a security interest in rents and not an absolute assignment. Therefore, Judge Lifland held, the Debtor had retained an interest in the rents at the time of petition, the rents were property of the estate, and the Debtor was entitled to use them as cash collateral. This appeal by the Bank followed.

## DISCUSSION

The issue before me is whether the Debtor had an interest in the rents at the time the bankruptcy petition was filed. This is an

issue of law and the standard of review is *de novo.*[2] *See, e.g., In re Prudential Lines Inc.,* 928 F.2d 565, 568–69 (2d Cir.), *cert. denied sub nom. PSS Steamship Co. v. Official Committee of Unsecured Creditors,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

Here, the Assignment of Rents was created under and governed by New Jersey law. (D. at 145, ¶ 15.) As a federal court sitting in diversity, I am bound to apply the substantive law as it has been interpreted by the highest court of the state, in this case New Jersey, whose laws govern the property interest at issue. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If such controlling authority does not exist, I may give "considerable weight" to "state law rulings by district court judges, within the circuit, who possess familiarity with the law of the state in which their district is located." *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 281 (2d Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982). I must, however, defer to state law interpretations by the pertinent federal court of appeals. *Id.* at 283:

> Where ... the pertinent court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule.

*Id.*

Here, there is ample case law from the New Jersey state, federal district and circuit courts to support my legal conclusion that under New Jersey law, the Debtor had no interest in the rents at the time of petition.

The Debtor contends, as it did below, that the Assignment of Rents is "nothing more than a disguised security interest." (Debtor's Mem. of Law at 3.) Plaintiff/appellant

---

**2.** The Debtor argues that this issue is a "mixed question of law and fact" and that I must therefore apply a more deferential standard of review, the "clearly erroneous" standard. (Debtor's Mem. of Law at 5–6.) This argument is unavailing in that Judge Lifland described himself as addressing a matter of law: "So what I am left with is the legal issue of whether assigned rents are property of the estate and cash collateral." (D. at 243.)

FFB, however, correctly states the law of New Jersey—that under the language of this particular Assignment, absolute title passed to FFB upon the Debtor's default, regardless of the purpose of the Assignment.

The Assignment of Rents provides in pertinent part:

> FOR VALUE RECEIVED, the Assignor hereby *grants, transfers and assigns* unto the Assignee all the right, *title* and interest of the Assignor in, under or by virtue of any of the following:
>
> 1. Any and all leases, tenancies and rental arrangements between the Assignor, as landlord, and any other person or entity, as tenant ... including ... *all rents,* income, issues and profits arising from the Leases.

(D. at 141) (emphasis added). The Assignment also grants a license to the Debtor to collect and use the rents so long as the Debtor is not in default.

> 1. So long as there shall exist no "Event of Default," as such term is defined in the Notes, the Mortgage or any other loan document, there is reserved to the Assignor a license to collect as they become due, but not prior to accrual, all rents, income, issues and profits from the Premises and to retain, use and enjoy the same. Upon the occurrence of an Event of Default under the Notes, the Mortgage or any other loan document, such license granted to the Assignor shall be immediately revoked without further demand or notice from the Assignee....

(*Id.* at 143–44.) Finally, a third provision provides that the Assignment of Rents was executed:

> FOR THE PURPOSE OF SECURING:
>
> 1. Payment of the principal and interest indebtedness evidenced by [the Notes]. Said Notes are secured by, *inter alia,* a certain valid first lien fee mortgage on the Premises.

(D. at 142.)

Judge Lifland held that when an assignment is given for the purpose of securing a note, as it was in this case, the security-related language creates an ambiguity as to whether the parties intended to create an absolute assignment or merely a security interest. Such ambiguity, he held, cannot have the legal effect of an absolute transfer of title; therefore, it creates merely a security interest. I disagree.

The United States Supreme Court has ruled that property interests, including those at issue in bankruptcy actions, are created and defined by state law. *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). As early as sixty years ago, New Jersey lower courts held that an assignment of rents passes title to the assignee regardless of the document's stated purpose. In a trio of cases arising during the Depression era, the New Jersey Court of Chancery held that an assignment of rents is an absolute assignment even when its stated purpose is to secure a debt and even when the assignment is a part of a mortgage document. *New Jersey Nat. Bank & Trust Co. v. Wolf,* 108 N.J.Eq. 412, 155 A. 372 (Ch.1931); *Stanton v. Metropolitan Lumber Co.,* 107 N.J.Eq. 345, 152 A. 653 (Ch.1930); *Paramount Bldg. & Loan Ass'n v. Sacks,* 107 N.J.Eq. 328, 152 A. 457 (Ch.1930). In *Stanton,* for example, the assignment expressly provided that the rents were assigned to the mortgagee upon default. 107 N.J.Eq. at 346, 152 A. 653. Neither the conditional default language contained in the assignment (which was similar to the default provision in this case) nor its security purpose language (similar to the purpose provision here) was held to alter the absolute nature of the assignment. Indeed, the *Stanton* court stated that despite such language—and despite the physical placement of the assignment within the mortgage—the legal status of the assignment remained distinct from that of the mortgage. ("The assignment ... was additional security and independent of the mortgage security. The assignment, though conditional, became absolute upon default...." *Id.* at 348, 152 A. 653.)

Although the New Jersey Supreme Court has never addressed the issue presented here, Judge Lifland did have access to two New Jersey district court cases directly on point, which he chose to ignore: *In re Glen Properties,* 168 B.R. 537 (D.N.J.1993), and *First Fidelity Bank, N.A., v. Jason Realty,*

*L.P.*, 1994 WL 774537 (D.N.J.), *aff'd*, 59 F.3d 423, 429 (3d Cir.1995). The district court opinions offered persuasive arguments in the Bank's favor. Both cases involved assignments that were virtually identical to the one before me. Like the Assignment in this case, they were executed separately from the mortgage; they were conditioned upon a default in the mortgage obligations, and they included security purpose language. The district court judges in both *Glen Properties* and *Jason Realty* concluded that the assignments granted to the lenders absolute title to the rents, not merely a security interest. As explained by Judge Debevoise in *Glen Properties*, "Ultimately, the question of each party's rights ... rests quite simply upon the language of the assignment[ ] in question." *Glen Properties* at 541. Judge Debevoise found that although the assignment was conditioned on default and executed for the purpose of securing a mortgage, the assignment itself expressed a "quite clear" intent to transfer absolute title. *Id.* Although he acknowledged that his ruling produced a harsh result for the Debtor, he noted "that public policy considerations inherent in Chapter 11 may [not] override the legitimate rights of a mortgagee in its own property." *Id.* at 539.

The district court's ruling in *Jason Realty* was unpublished and on appeal when Judge Lifland was asked to consider it. Nevertheless, both *Jason Realty* and *Glen Properties* were decisions of federal district courts and thus had more persuasive authority than the bankruptcy cases Judge Lifland relied upon. In any event, *Jason Realty* has been resoundingly affirmed by the Third Circuit since Judge Lifland's decision, and the Third Circuit's ruling provides controlling authority for the issue before me.

As noted, the assignment in *Jason Realty* is virtually a carbon copy of the one before me. FFB was also the plaintiff in that case and had appealed from a similar bankruptcy court order allowing the Debtor to use rents as cash collateral. Chief Judge Thompson of the New Jersey district court, in reversing the bankruptcy court, had been unpersuaded by the Debtor's argument that the purpose of the agreement—to secure the note—dictated its legal effect. As the New Jersey chancery courts had earlier indicated, such a purpose "does not decide what interest each party holds," Judge Thompson asserted. 1994 WL 774537 at 4. "An absolute assignment and a license to the assignor may certainly be used to secure a note; they simply provide the creditor with a greater degree of security than a lien." *Id.*

In reaching his conclusion that the security purpose language in the Assignment of Rents created an ambiguity,[3] Judge Lifland relied primarily upon a then-recent New Jersey bankruptcy court decision, *In re Mocco*, 176 B.R. 335 (Bankr.N.J.1995), which held that an assignment of rents, if granted for the purpose of securing a note or mortgage, creates merely a security interest. Judge Lifland stated as follows:

> In determining the Debtor's property interests in rents under New Jersey law the Court must address two factors: (1) Whether the language of the assignment instrument creates an absolute assignment or merely a lien on rents and (2) whether a mortgagor retains any interest in rents following a default but prior to delivery of a sheriff's deed irrespective of the language of the assignment. *In re Mocco*, 176 B.R. 335, 341 (Bankr.N.J.1995). Absent unequivocal and unambiguous language reflecting the parties' intent to transfer title to the rents, such assignment will be construed as granting the assignee merely a security interest. *In re Donato*, 170 B.R. 247, 253 (Bankr.N.J.1994).

---

**3.** The debtor contends that this is a finding of fact, not a conclusion of law, and that therefore it may not be disturbed unless it is clearly erroneous. (Debtor's Mem. of Law at 5–6) (citing Fed. R.Bankr.Pro. 8013, which provides that "[f]indings of fact ... shall not be set aside unless clearly erroneous.") I find, however, that Judge Lifland's finding of ambiguity was a legal conclusion, based on two previous bankruptcy court opinions that had construed similar language as *per se* ambiguous. Moreover, even if I were to agree that Judge Lifland's finding was a factual one, I would be compelled to reverse it as clear

Here, the language of the assignment clause in the mortgage [4] and in the collateral assignment of lease document speaks of being "further security" for the indebtedness of the note. The language does not evidence a clear intent to transfer the rents or absolutely assign them to the bank.

Moreover, New Jersey is a lien theory state in which mortgages are viewed as security interests rather than transfers of title. *See Mocco* at 343. In New Jersey the Debtor retains a collection interest in the rents that is grounded in the equity of redemption. *See Mocco* at 344. The equity of redemption vests upon the execution of the mortgage and continues until delivery of sheriff's deed. *Id.* Based upon all of the above, I find that the Debtor retains an interest in the rents and thus the rents are cash collateral.

(D. at 244–45.)

The Third Circuit has now held otherwise. Moreover, the Third Circuit expressly followed Judge Debevoise's analysis in *Glen Properties,* stating that it saw no "meaningful difference" between the assignment in that case and the assignment before it in *Jason Realty. Glen Properties* at 428–29. In so ruling, the Third Circuit took the occasion to criticize several New Jersey bankruptcy courts, particularly the court in *Mocco,* for disregarding the authority of the district courts.[5] Under these circumstances, *Mocco* cannot be considered either good or persuasive law in New Jersey. As the Third Circuit cautioned, the worthy goal of assisting a Debtor's recovery "cannot be reached by merging the rights of an assignee of leases with those of a mortgagee. These concepts are not fungible, but embrace separate and distinct attributes of

property law." *Jason Realty,* 59 F.3d at 429.

In its response papers filed in the instant appeal, the Debtor dismisses *Jason Realty* in a bilious footnote, contending:

"The Third Circuit decision can not be relied on here for precisely the reasons stated in *Mocco.* The fundamental issue in this case is a question of fact: what is the intent of the parties as evidenced by the 'Collateral Assignment.' " (Debtor's Mem. of Law at 24 n. 17.) This argument is nonsensical. The reasoning of a bankruptcy court whose decision has been disavowed by its own circuit court cannot be relied upon.

Similarly unavailing is the Debtor's contention that § 552(b)(2) of the Bankruptcy Code preempts the application of New Jersey law. Section 552(b)(2) merely provides that if a lender has a pre-petition security interest in property and rents, the lender's security interest extends, post-petition, to both property and rents. 11 U.S.C. § 552(b)(2). Nothing in § 552(b)(2) preempts New Jersey law. As noted, the Supreme Court has held that property interests are created and defined by state law. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. The Supreme Court has also stated that the lender must be "afforded in federal bankruptcy court the same protection he would have under the state law if no bankruptcy had ensued." *Id.* at 56, 99 S.Ct. at 918; *see also Glen Properties* at 540–41 (citing *Butner* ). On its face, § 552(b)(2) speaks only to security interests. Under New Jersey law, FFB did not have a security interest; it had an absolute assignment. Therefore, § 552(b)(2) does not apply.

---

error on the basis of the Third Circuit's ruling in *Jason Realty.*

**4.** The judge was referring here to Section 23 of the Mortgage, which provides:

*Assignment of Rents.* The Mortgagor hereby assigns to the Mortgagee the rents, issues and profits arising out of or from the Mortgaged Premises *as further security* for the payment of the indebtedness secured hereby. . . .

(D. at 119–20) (emphasis added).

**5.** The Third Circuit stated:

In *In re Mocco,* . . . a bankruptcy court was faced with an assignment almost identical in language to the one before us. In its interpretation, the bankruptcy judge refused even to address the reasoning of the Chief Judge of the District of New Jersey in this case, stating, "this court is not bound by *Jason,* an unpublished opinion." The bankruptcy judge also refused to follow the New Jersey district court precedent in the published opinion in *Matter of Glen Properties,* saying flatly, "This court disagrees."

*Jason Realty,* 59 F.3d at 429 n. 2 (citations omitted).

## CONCLUSION

In summary and for the reasons discussed above, I hold that the Debtor's interest in the rents from Metroplex Center terminated when it defaulted on its obligations and when FFB enforced its rights under the Assignment. Because both actions occurred before the time of petition, the rents are not property of the bankruptcy estate and the Debtor may not use them as cash collateral. The Clerk of the Court is directed to enter judgment (1) reversing the Order Authorizing Debtor's Use of Cash Collateral, entered on May 11, 1995, in the U.S. Bankruptcy Court of the Southern District of New York, and (2) remanding this matter to the Bankruptcy Court to enter an order consistent with this Opinion.

**SO ORDERED.**